**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**BUREAU OF DANGEROUS GOODS,
LTD.,**

              **Plaintiff,**

**-vs-**                                                 **Case No. 6:11-cv-774-Orl-18DAB**

**HAZMAT SOFTWARE, LLC, LUIS
ZAMBRANA,**

              **Defendants.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION FOR SUMMARY JUDGMENT (Doc. No. 31)**
>
> **FILED:**       **January 30, 2012**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**, in part, as set forth herein.

*Background*

The case presents with an odd history, which is pertinent to the instant motion. According to the Complaint (Doc. No. 1), Bureau of Dangerous Goods, Ltd. ("Plaintiff") sues Hazmat Software, LLC and Luis Zambrana ("Defendants"), for trademark infringement, unfair competition and false designation of origin, arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.,* and for unfair competition and deceptive and unfair trade practices, under Florida law.

Shortly after filing the Complaint, the Court issued an Order to Show Cause directed to Plaintiff, regarding Plaintiff's failure to timely respond to the Related Case Order and the Interested

Persons Order (Doc. No. 7). Plaintiff responded that an attorney at the firm (who is not the attorney that has appeared for Plaintiff in this matter) was responsible for all filings for the firm, but he was suffering from injuries, was working out of his home, and inadvertently failed to respond to the Orders (Doc. No. 10). Plaintiff belatedly tendered the responses.

Defendants answered the Complaint, asserted affirmative defenses and pled a Counterclaim for a judgment declaring that Defendants do not violate the Lanham Act and declaring that Plaintiff's trademark is generic and/or descriptive without secondary meaning, and therefore invalid and unenforceable (Doc. No. 17). Plaintiff did not respond to the Counterclaim. Defendants filed a motion for entry of clerk's default (Doc. No. 19) and a motion for entry of default judgment (Doc. No. 20), but then withdrew the motion for entry of clerk's default (Doc. No. 21), but not the motion for entry of default judgment. No response was filed by Plaintiff to the motion for entry of default judgment. Meanwhile, the District Court issued its second show cause Order directed to Plaintiff, this time to show cause why the case should not be dismissed for lack of prosecution due to the failure to file the required Case Management Report (Doc. No. 22).

Although Plaintiff did not respond to the Counterclaim and did not respond to the motion for entry of default judgment, the Court denied the motion for entry of default judgment, based on the recommendation of the undersigned (Doc. No. 23, 30). Following issuance of the report and recommendation, Plaintiff finally replied to the Counterclaim (Doc. No. 24), and *then* moved for leave to do so, asserting an "isolated" calendaring error (Doc. No. 25). The Court granted the motion for leave, to the extent that it did not strike the untimely filing, but noted that it did so "reluctantly." (Doc. No. 26). The Court warned:

> Counsel is advised that, having undertaken this representation, the Court expects counsel to prosecute it in accordance with all professional standards and such includes the obligation to abide by all case deadlines. Having been clearly notified of a calendaring issue more than once in this matter, Plaintiff is cautioned that such issues will no longer be sufficient to avoid sanction in the future.

(Doc. No. 26).

Shortly thereafter, on September 9, 2011, Plaintiff filed its response to the outstanding Order to Show Cause, noting that the case was filed during a "tumultuous" time for the law firm, and advised the Court that "[t]he docketing errors have been corrected, the case is on track, and Plaintiff fully expects to satisfy its obligation to the Court by maintaining the time frame established in the Case Management Report." (Doc. No. 28). The Court was assured "that additional measures will be taken to ensure future compliance with the deadlines set in the Case Management Report." *Id.*

Four months later, Defendants filed the instant motion for summary judgment. The motion avers that Defendants served their first set of Discovery Requests, Request for Admissions and Interrogatories on Plaintiff on December 22, 2011, but Plaintiff failed to respond to the discovery. Defendants therefore deem admitted all of the matters in the Request for Admissions ("the Requests"), and move for summary judgment based on an absence of genuine issue of material fact. Defendants also contend that "even without deeming the Requests admitted" they are entitled to summary judgment as "Plaintiff has an extremely weak mark at best, Defendants have not used the mark and there is no likelihood of confusion among consumers." (Doc. No. 31). The motion is supported by the Declaration of Luis Zambrana (Doc. No. 31-3) and other exhibits, all attached to the motion.

Following the filing of the instant motion, the District Court issued a *Milburn* Order, which notified the parties that the Court would take the Motion for Summary Judgment under advisement on March 15, 2012, and "[p]rior to that date, the adverse party(ies) may file affidavits(s) within the purview of the Federal Rule of Civil Procedure 56 in opposition to the Motion." (Doc. No. 32). On February 13, 2012, Plaintiff filed its response to the motion (Doc. No. 33), which incorporates what purports to be an Affidavit of *counsel,* asserting that Plaintiff did not receive the discovery and has conducted none of its own, and thus "Plaintiff is not in a position to prosecute its claims against Defendants as set forth in the Complaint as Plaintiff has not had the opportunity to conduct any

discovery, adduce any evidence or learn of any facts that are critical to its claims." *Id.* Defendants have filed a Reply (Doc. No. 35), with attached exhibits.

The matter has been referred to the undersigned, the time for filings in accordance with the *Milburn* Order has expired, and the matter is ripe for review. For the following reasons, it is **respectfully recommended** that the motion be **granted, in part.**

### *Summary Judgment Standards of Law*

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (2011)[1] a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).)

The party seeking summary judgment bears the initial burden of demonstrating, by reference to the record, that there are no genuine issues of material fact to be determined at trial. *Bell v. Madan*, No. 3:09-cv-202-J-34MCR; 2012 WL 394552, \*1 (M.D. Fla. Feb. 7, 2012); *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied this burden, the non-movant is then similarly required to cite to portions of the record which show the existence of a material factual dispute. *Celotex*, 477 U.S. at 324. In doing so, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

---

[1] On December 1, 2010, amendments to Rule 56 became effective. The amendments are "not intended to change the summary judgment standard or burdens." *Williams v. Ruskin Co., Reliable Div.,* No. 1: 10-cv-508-WC*;* 2012 WL 692964, \*2 (M.D. Ala., March 1, 2012) (internal citation omitted).

The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[ ], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A) & (B). If the non-movant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed.R.Civ.P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

### *Issues and Analysis*

Applied here, Defendants contend that they are entitled to summary judgment as: 1) the failure to respond to the Request for Admissions deems all of the assertions therein admitted, including assertions sufficient to defeat the causes of action; and 2) even without relying on the Requests, the Declaration of Defendant Zambrana is sufficient to show an absence of material fact. In response, Plaintiff contends that: 1) it did not receive the Requests and 2) it has not had an opportunity to undertake discovery. As Defendants' showing is sufficient to shift the burden to Plaintiff, and Plaintiff has presented no evidence whatsoever in support of its Complaint, the motion for summary judgment with respect to Plaintiff's claims should be granted.

### *The Complaint*

For purposes of analysis the Court reviews the allegations of the Complaint, but notes that the allegations, which are not verified, are not evidence. Plaintiff alleges that it filed for and obtained a federal trademark registration for the mark "ShipHazmat" and, since February 1, 2005, has used in

commerce the trademark "ShipHazmat" on software for the preparation of shipping documents for hazardous materials. Plaintiff avers that "the consuming public has come to identify the mark with the goods of Plaintiff" and its use "has been extensive, continuous, open and notorious." (Allegations 7-10). Plaintiff alleges that it is the senior user of the "ShipHazmat" mark, and it was the first to use the mark in commerce on software products. Plaintiff asserts that it has used the mark extensively on the internet in the promotion and sales of its software products. It alleges that it uses and owns the domain names www.shiphazmat.net. and www.shiphazmat.com. and offers its goods and services through these, and other websites. Plaintiff states that it has invested substantial sums in the promotion of its software products under the "ShipHazmat" trademark, and has generated substantial revenues such that the mark has acquired a secondary meaning in the marketplace as a source of premium, informed, and reliable products relating to the shipping and regulation of dangerous goods (Allegations 11-16). Plaintiff contends that the public "associates the "ShipHazmat" trademark with Plaintiff . . .and the use of the "ShipHazmat" trademark by Defendants is confusing the consuming public into believing that the goods and services offered by Defendants are those of Plaintiff." (Allegation 19).

Plaintiff asserts that "upon information and belief," since 2010, Defendants began using the designation "shiphazmatonline." Defendants sell similar software goods and services under the designation and on the internet through the website www.shiphazmatonline.com. "Upon information and belief," Defendants allegedly registered the domain name www.shiphazmatonline.com in 2010, and began using the designation "shiphazmatonline" well after Plaintiff first used its "ShipHazmat" trademark, making Defendants the junior user of the "ShipHazmat" designation. Plaintiff alleges that Defendants were notified of Plaintiff's objection to their use of the "ShipHazmat" designation, and the demand to cease was ignored. According to Plaintiff, "upon information and belief," since 2010, Defendants have misappropriated the "ShipHazmat" trademark by using the designation in its domain name. Plaintiff contends that Defendants' use of Plaintiff's "ShipHazmat" trademark in its domain

name, and on its website is likely to cause confusion, initial interest confusion, and/or actual confusion with Plaintiff's "ShipHazmat" registered trademark. (Allegations 20-26). Plaintiff specifically alleges that it "**has evidence** that the consuming public is confused as to the true and exclusive source of goods and services under the "ShipHazmat" trademark, and thus, the consuming public is both likely to be confused, and actually confused as to the sole and exclusive source of software goods and services under the "ShipHazmat" trademark, since 2010" (Allegation 27) (emphasis added). Contending that Defendants have "willfully, deliberately, and wrongfully infringed upon Plaintiff's rights in and to the "ShipHazmat" trademark by using the "ShipHazmat" trademark to offer and sell similar goods and services from their website with the intent to deprive Plaintiff of the exclusive right to the use of the "ShipHazmat" trademark and the associated goodwill" (Allegation 25), Plaintiff sues for trademark infringement/false designation of origin under 15 U.S.C. §§ 1114 and 1125 (Count I), unfair competition and false designation of origin under 15 U.S.C. § 1125(a) (Count II), unfair competition under Fla. Stat. § 495.151(Count III), and deceptive and unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla.Stat. §501.201, *et. seq.*

*The Requests*

Defendants contend that they served their first set of Discovery Requests, Request for Admissions and Interrogatories on Plaintiff as set forth in the documents executed certificates of service. Defendants present the Declaration of Barbie Mahan, attesting (under penalty of perjury) that she sent the discovery requests via U.S. Mail on December 22, 2011, to Plaintiff's counsel of record – Louis R. Gigliotti (Doc. No. 31-1 and 31-2). The Court notes that the address specified by Ms. Mahan is the same as that provided by counsel in his response to the instant motion. Plaintiff did not respond to the discovery requests. As such, Defendants contend that the failure to respond to the Requests for Admissions results in admission of the following facts, pursuant to Federal Rule 36 and controlling law:

> (a) the term "ship" is generic for "to put on board a ship or other means of transportation; to send or transport by ship, rail, truck, plane etc.; (b) Plaintiff ships hazardous materials as part of its business; (c) Plaintiff sells software which enables others to ship hazardous materials; (d) "hazmat" is short for or an abbreviated version of "hazardous materials;" (e) it's common in the hazardous materials industry to refer to "hazardous materials" as hazmat; (f) "hazmat" is generic for "hazardous materials;" (g) other companies in the hazardous materials industry use the term "hazmat" as part of their business to refer to hazardous materials; (h) Defendants are not using and have never used the "ShipHazmat" logo; (I) Defendants provide software to enable others to ship hazardous materials; (j) Defendants are not using the ShipHazmat logo anywhere on their website www.shiphazmatonline.com; (k) Defendants are not using the words SHIP and HAZMAT next to one another anywhere on their website www.shiphazmatonline.com; (l) Plaintiff's "ShipHazmat" trademark registration is on the Supplemental Register and has yet to gain secondary meaning in the marketplace; (m) there have been no instances of actual confusion regarding Defendants' alleged use of the "ShipHazmat" mark; (n) Plaintiff's products will not be sold on the shelves next to Defendants' products; (n) Plaintiff has not lost any business because of Defendants' website www.shiphazmatonline.com; (o) Defendants' website www.shiphazmatonline.com offers hazardous materials shipping papers for free; (p) Defendants do not profit from the website www.shiphazmatonline.com; (q) Plaintiff is not the owner of the "ShipHazmat" mark; (r) Plaintiff consented to Defendants' use of the "ShipHazmat" mark; (s) there is no likelihood of confusion among consumers regarding Defendants' alleged use of the "ShipHazmat" mark; (t) Plaintiff has not been damaged by Defendants' use of the "ShipHazmat" mark; (u) Plaintiff has not been damaged by Defendants' alleged unfair competition complained of in the Complaint; (v) Defendants did not act willfully or with malicious intent when it allegedly used the "ShipHazmat" mark; (w) Defendants did not act with deceptive or fraudulent intent when it allegedly used the "ShipHazmat" mark; and (x) there have been no instances of actual confusion between Defendants' alleged use of the "ShipHazmat" mark and Plaintiff's use of the "ShipHazmat" mark.

(Doc. Nos. 31 and 31-1).

Federal Rule 36(a)(3) provides that a matter is admitted unless, "within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). *See also Anheuser-Bush, Inc. v. Philpot,* 317 F.3d 1264, 1265, fn. 1 (11th Cir. 2003). Pursuant to Rule 5, service on a represented party is made by, among other methods, mailing it to the person's last known address, and service is "complete upon mailing." Fed. R. Civ. P. 5(b)(1) and (2) (c). Thus, Defendants sworn evidence shows that the discovery requests were, indeed, properly served on December 22, 2011. No written answer or objection was served on Defendants.

In response brief here, Plaintiff offers only an unsworn "Affidavit" of its counsel, Louis R. Gigliotti, stating that "neither Plaintiff nor Plaintiff's counsel, nor any staff member of Plaintiff's counsel ever received any discovery requests from Defendants" (Doc. No. 33). This "Affidavit," however, is not evidence, as it is not sworn nor was it tendered under penalty of perjury. *See Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1248, n.8 (11th Cir. 2009) (unsworn statements do not meet the requirements of Federal Rule of Civil Procedure 56(a) and cannot be considered by a district court in ruling on a summary judgment motion, *citing Carr v. Tatangelo,* 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)). Moreover, even if the Court were to accept the defective form of the Affidavit, counsel can only attest as to matters in his *personal* knowledge. Fed. R. Civ. P. 56(c)(4). Here, Mr. Gigliotti purports to speak for Plaintiff, the law firm, and all staff members, without any evidentiary foundation showing that such matters are within *his* personal knowledge.[2] At best, this paper stands only for an assertion, by an officer of the court, that Mr. Gigliotti personally did not receive the discovery requests. This statement, even if fully credited, does not serve to counter the sworn declaration of Ms. Mahan that she served the discovery, and therefore does not create a genuine issue of material fact.[3] The Court finds that the discovery requests were, indeed, served, and the failure to respond as contemplated by the federal rule results in the factual matters being deemed admitted.

Supporting this conclusion is the fact that the response brief is unaccompanied by any evidence or even a proffer of evidence *as to the merits* of the matters set forth in the Requests. Nowhere does Plaintiff offer any evidence to dispute the factual matters set forth in the Requests;

---

[2] Notably, counsel submits no sworn statements from Plaintiff, other members of the law firm, or staff members. Even if the Court were to consider the hearsay statements implied by counsel's assertion that "no one" received anything, counsel fails to set forth how he came to know this information.

[3] Indeed, in view of the "tumultuous" history of this law firm's representation in this matter, with numerous matters overlooked due to employee issues, there is no necessary inconsistency in crediting Ms. Mahan's sworn statement that she sent the discovery to Mr. Gigliotti at his office address, and Mr. Gigliotti's representation that he personally did not receive it.

there is no motion to extend time to answer the discovery; nor is there any other indication that, if given an opportunity to answer the Requests on the merits, the Answers would be different than admissions. This, although the motion for summary judgment with the propounded discovery attached was filed January 30, 2012, and the *Milburn* Order gave Plaintiff until March 15, 2012 in which to file opposing affidavits. Rather than disputing the factual basis of Defendants' motion, Plaintiff's only response is to claim that the motion is premature and to state that it needs to take discovery in order to prosecute its claims. This position is completely untenable.

*The timing of the instant motion*

Under the local rules, the parties may commence discovery following the case management meeting, which occurred here on September 9, 2011 (Doc. No. 27). *See* Local Rule 3.05. While Plaintiff complains that it "has obviously not been afforded *any* opportunity to discover even the most basic facts and evidence that any plaintiff would necessarily require in order to marshal the merits of its case" (Doc. No. 33). This is plainly untrue. In addition to the normal pre-filing investigation counsel was required to undertake in accordance with his professional obligations, Plaintiff has had *over five months* in which to conduct discovery.[4] Despite this ample time period, Plaintiff has conducted no discovery. Indeed, there is no indication that Plaintiff has propounded any discovery to date, even in view of the pending motion and the *Milburn* Order. While Plaintiff cites numerous cases cautioning against entering summary judgment before the parties had a chance to conduct discovery, these cases involved parties who had no meaningful *opportunity* to conduct discovery. Such is plainly not the case here. Plaintiff fails to cite a single case where a party was able to defeat entry of summary judgment simply by refusing to conduct or participate in any discovery.

Moreover, Plaintiff's statement is at odds with its own pleading. As noted above, Plaintiff alleges in its Complaint that it "**has evidence** that the consuming public is confused as to the true and

---

[4]If, in fact, Plaintiff has conducted no investigation and is completely unaware of "even the most basic facts" regarding this Complaint, counsel and Plaintiff may well have run afoul of Rule 11.

exclusive source of goods and services under the 'ShipHazmat' trademark" (Allegation 27). Despite this allegation, Plaintiff presents nothing whatsoever in support of its claims, in the face of a pending motion for summary judgment. Indeed, other than the Admissions, there is not even any evidence before the Court of the existence of the mark at issue. Plaintiff does not need any discovery from Defendants to obtain its own Affidavit, or to produce documents or other evidence within its own custody and knowledge. Its failure to do so cannot be laid at the Defendants' door. Federal Rule 56 provides that unless a local rule or court order directs otherwise, "a party may file a motion for summary judgment *at any time* until 30 days after the close of discovery." Rule 56(b), Federal Rules of Civil Procedure. The Court finds the motion for summary judgment is not premature.

*The merits*

Turning to the merits of the motion, the Court notes that in addition to the matters deemed admitted via the Requests, Defendants have tendered the Declaration of Luis Zambrana (Doc. No. 31-3), the manager and owner of Hazmat, which provides, in pertinent part, the following unrebutted facts:

> Hazmat Software is a technology company with leading positions in hazardous materials management and transportation technologies. Hazmat Software is also the largest provider or hazardous materials shipping solutions in the United States. One of these solutions is its website www.shiphazmatonline.com. The website launched on February 1, 2011, to help shippers, carriers and freight forwarders prepare the entire carrier and government required hazardous materials shipping papers. HAZMAT is a common term used in the hazardous materials industry to refer to "hazardous materials" or "dangerous goods." In the hazardous materials industry, HAZMAT is considered a generic term.
>
> Hazmat Software uses the term HAZMAT in association with its business and so do a number of competitors and other companies in the industry. Prior to this lawsuit, Zambrana was unaware that the Plaintiff had a trademark on its SHIPHAZMAT logo. In fact, it was his understanding that you could not get a trademark for anything that incorporated the word HAZMAT because he had previously tried to get a trademark for "HAZMAT" for "computer software for the management and shipping of hazardous material" and it was rejected by the United States Patent and Trademark Office as merely descriptive.
>
> Over the past year, since the launch of www.shiphazmatonline.com., Zambrana has not received one phone call, email or any correspondence from a customer that was

confused and thought that the website was somehow approved, endorsed or associated with Plaintiff. Zambrana attests that neither he, nor Hazmat Software or his agents, employees, or independent contractors have ever used the SHIPHAZMAT logo in association with the business of Hazmat Software, LLC.

Zambrana attests that he used the terms SHIP and HAZMAT in the domain name www.shiphazmatonline.com and there was also some use of the terms together (in a sentence and in a descriptive manner) on the website at the beginning of this lawsuit, but in an effort to resolve the lawsuit, "I took down all use of the terms on the website."

The services provided on www.shiphazmatonline.com are free to the public (meaning no money is made from the services provided on this website) and are nothing like the goods provided by Plaintiff via its www.bureaudg.com and www.shiphazmat.net. Plaintiff sells software programs for $150 - $825 that not only provides documentation for shipping hazmat, but also package the products, retain all records for the customer and electronically process the data ONLY for shipments transported under lATA, the International Air Transport Association. www.shiphazmatonline.com, however, provides the documentation necessary to ship hazardous materials under the United States 49 Code of Federal Regulations, United Parcel Service specific mandates as well as the International Air Transport Association, and does so for free.

(Doc. No. 31-3).

Defendants claim that the facts admitted and uncontested establish no genuine issue for trial in that "Plaintiff's Lanham Act claim is extremely weak based on the fact that its mark is on the Supplemental, rather than the Principal Register; Defendant has never used Plaintiff's logo; Defendants' use of SHIP and HAZMAT is in a descriptive manner; and, there is no likelihood of confusion among consumers." Absent any evidence to the contrary, the Court agrees.

*Count I- trademark infringement/false designation of origin under 15 U.S.C. §§ 1114*

Title 15 U.S.C. Section 1114 provides, in pertinent part:

1) Any person who shall, without the consent of the registrant--

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which *such use is likely to cause confusion, or to cause mistake, or to deceive*; or
(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which *such use is likely to cause confusion, or to cause mistake, or to deceive,*

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C.A. § 1114 (emphasis added).

"In a trademark infringement action, the plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion." *Dieter v. B & H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir.1989) (citations omitted). Although there is no evidence proffered by Plaintiff with respect to the mark, Defendants assert that it is "undisputed that Plaintiff's "SHIPHAZMAT" logo is registered on the Supplemental, rather than the Principal Register" (Doc. No. 31 at p. 8). For present purposes, the Court accepts this as stipulated fact. The Court also accepts that Defendants used the terms Ship Hazmat, although not the logo itself, as set forth in the unrebutted Declaration and the Admissions. However, Plaintiff has not presented any evidence that Defendants' use of the mark is likely to cause confusion. Although "a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment," *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir.2004), Plaintiff offers even less than that here. The only evidence before the Court is that there have been no incidents of confusion and such is unlikely, in that the businesses are dissimilar. As Plaintiff has failed to meet its burden of countering this evidence with citation to record evidence establishing a genuine issue for trial, summary judgment is appropriate in Defendants' favor on this count.

*Count II-unfair competition and false designation of origin under 15 U.S.C. § 1125(a)*

This section provides, in part:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125

As above, there is no evidence of likely confusion or deception here. Moreover, Defendants have shown by unrebutted evidence that the terms "ship" and "hazmat" are descriptive within the industry. Thus, there is no evidence of false or misleading representations sufficient to present a genuine issue of fact as to this claim. Summary Judgment in Defendants' favor should be granted on this count, as well.

*Count III-unfair competition under Fla. Stat. § 495.151 and Count IV- deceptive and unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act, Fla.Stat. §501.201, et. seq.*

"To prevail on a claim under Fla. Stat. § 495.151, a plaintiff must demonstrate: 1) the plaintiff's mark is famous; 2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; 3) the defendant's use was commercial and in commerce; and 4) the defendant's use of the plaintiff's mark has likely caused dilution." *Z Productions, Inc. v. SNR Productions, Inc.,* No. 8:10-cv-966-T-23MAP; 2011 WL 3754693, *5 (M.D. Fla. Aug. 18, 2011), *citing RainBird Corp. v. Taylor,* 665 F.Supp.2d 1258 (N.D. Fla. 2009) and *Great Southern Bank v. First Southern Bank*, 625 So.2d 463, 471 (Fla.1993). Even if the Court were to assume that the mark is more than the logo (which the Court cannot find on this record) and that Defendants' use was commercial despite the free nature of the website, there is no evidence of any likely dilution.

Similarly, to establish a violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*., Plaintiff must prove: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages. *Z Productions, supra, citing Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla.

2d DCA 2006). A cause of action alleging a violation of FDUTPA arising from a trademark infringement claim requires proof that the plaintiff's mark has priority, that the competitor used the mark in commerce, and that the competitor's use of the mark is likely to cause consumer confusion. *Z Productions, supra, citing Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.,* 510 F.Supp.2d 1110, 1114 (S.D. Fla. 2007). As above, Plaintiff presents no evidence that use of the mark is likely to cause confusion. Summary Judgment should be granted in Defendants' favor on the state law claims.

*Counterclaim*

To the extent the Counterclaim seeks a declaration that Defendants have not infringed the mark, it should be granted, for the reasons set forth above. The Court finds that there is no genuine issue of material fact regarding Defendants' appropriate use of its website and the domain name www.shiphazmatonline.com. While Defendants go further and urge the Court to find that *Plaintiff* has no rights to the ShipHazmat logo, the Court need not reach such a conclusion on the record before it. Defendants aver that they are not and have never used the logo and have removed all use of the term on the website. As such, there is no active controversy regarding *Plaintiff's* rights to its logo. Thus, the Court finds that the motion for summary judgment on the counterclaim should be granted only in part.

*Attorney's Fees*

Defendants contend that this is an exceptional case under 15 U.S.C.§ 1117(a), and that they are entitled to attorney's fees as the prevailing party, citing, among other things, *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332 (11th Cir. 2001). In *Tire Kingdom,* however, the Eleventh Circuit noted:

> We have previously said that an "exceptional case" is one that can be characterized as "malicious, fraudulent, deliberate and willful," *Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir.1989), or one in which "evidence of fraud or bad faith" exists, *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1169 (11th Cir.1982).

-15-

253 F. 3d at 1335.

Applied here, there is no evidence of maliciousness or bad faith. Rather, it appears that Plaintiff and/or its counsel have chosen to prosecute this action in slip-shod fashion. For that, the entry of judgment against it on all claims and in favor of Defendants with respect to the counterclaim (to the extent it seeks a declaration that it has not violated the mark) is a fitting enough result. There is no basis for finding this case exceptional, and the Court does not recommend an award of fees.

## Conclusion

For the reasons set forth above, it is **respectfully recommended** that the motion for summary judgment be granted in Defendants' favor on all claims in the Complaint; granted in Defendants' favor to the extent the Counterclaim seeks a declaration that Defendants have not infringed the mark, and denied to the extent Defendants seek a declaration that Plaintiff's mark is invalid; and denied to the extent Defendants seek an award of attorney's fees.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on March 30, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy